[No. 12853.    Department Two. — May 28, 1889.]

In the Matter of the Estate of CHARLES A. BAUER, Deceased.    CHARLES F. BAUER, Appellant, v. FREDERICA GARRETT, Respondent.

Husband and Wife — Community Property — Disputable Presumption. — Property purchased during coverture is presumptively community property; but this presumption is disputable, and may be overcome by clear and certain proof that the property, or a part thereof, was purchased with separate funds.

Id. — Mingling of Common and Separate Property. — When property is acquired partly with separate funds and partly with community funds, it becomes in part the separate property of the spouse furnishing the separate funds, and in part community property, in proportion to the separate and community funds invested in it.

Id. — Following Separate Property — Profits. — In following separate property through its various mutations, the principles should be applied that what is shown to be separate property remains such, and that the profits thereof acquire the same character. But where profits are earned by the commingling of common and separate funds so as to destroy their identity, it not appearing what proportion of profits belonged to each, such profits must be considered as belonging to the community.

Id. — Investment of Separate Property — Partnership — Purchase and Sale of Partner's Interest. — When the property invested in a partnership business is the separate property of the husband, and the husband subsequently purchases the interest of his partner in such business out of his separate funds, and resells the same at a profit to another partner, the proceeds of such sale, including the profit realized, must be deemed the separate property of the husband.

Id. — Homestead — Evidence — Admissions of Wife as to Separate Property of Husband — Estoppel. — A declaration of homestead joined in by husband and wife, which declares that the homestead property to the extent of three thousand dollars was acquired and improved with the separate estate of the husband, is an admission of the wife, which can be used as evidence against her, though standing alone it is not sufficient to overcome the presumption that the property belonged to the community. Such declaration, and the fact that while acting as executrix of her husband she signed and swore to a similar statement in the inventory of his estate, have the effect of admissions, but are subject to explanation, and do not estop her from asserting the contrary.

Evidence — Admissions of Tenant in Common. — The acts and declarations of one co-tenant in the presence and hearing of the other, as to their relative rights, is competent evidence against the one claiming under the other.

Id. — Attorney and Client — Privileged Communication. — When a lawyer acts as the common attorney of two parties, their communica-

tions to him are privileged as far as concerns stangers, but as to themselves they stand on the same footing as to the lawyer, and either can compel him to testify against the other as to their negotiation.

Appeal from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion.

*F. J. French,* and *T. M. Osment,* for Appellant.

*McAllister & Bergin,* for Respondent.

Gibson, C.—In probate. Contest between Charles F. Bauer, son of deceased, and his mother, Frederica Garrett, late widow of the deceased, over the settlement of the final account of the administrator, and the final distribution of the residue of the estate.

The deceased and Frederica Bauer—now Garrett—intermarried on the 7th of May, 1868, and on the 9th of May, 1869, the contestant was born unto them. On the 8th of November, 1872, the deceased in his own name purchased the land in controversy for five thousand dollars, and received a deed therefor in the usual form.

The deceased and his wife, on March 4, 1875, and while living upon and occupying the land as a place of residence, jointly executed and acknowledged a declaration of homestead in proper form, and caused the same to be recorded in the office of the county recorder in and for the city and county of San Francisco. The homestead thus created still exists. On December 1, 1878, Charles A. Bauer died, leaving a will dated April 6, 1875, whereby Frederica Bauer, his widow, and one Liemert were nominated as executrix and executor of the will, and his son, the contestant, made sole devisee of the separate property of deceased, and of one half of the community property. The will was admitted to probate upon the application of his widow, who was appointed and duly qualified as executrix, and acted as such until

LXXIX. Cal.—20

October, 1880, when, after her accounts were finally allowed and settled, she resigned and was discharged from her trust.

On the twenty-sixth day of October, 1880, the present administrator, husband of the late widow of Bauer, deceased, was appointed, but did not qualify as such until February 14, 1887, six years and four months after his appointment. He thereupon entered upon the discharge of his duties as administrator, and on the twenty-third day of August, 1887, filed his final account with his petition for final distribution, showing *inter alia* that all the personalty belonging to the estate had been disposed of; that the only residue consisted of the homestead, and that the same was community property; and that the only heirs and devisees of deceased were contestant and his mother, Frederica Garrett.

To which petition Mrs. Garrett answered, averring that the homestead was selected and declared to be such by herself and her former husband; that it was at that time community property not exceeding five thousand dollars in value, and up to the date of the death of deceased did not exceed such value, and closing with a demand for the distribution of the homestead to her as her sole property. The contestant filed exceptions to the administrator's account, for his, the administrator's, failure to collect and charge himself with the rent of the homestead property from the date of his appointment until he qualified, and for expenditures for counsel fees and interest paid on a mortgage debt which had never been presented to the administrator for allowance. And also his, contestant's, opposition to the distribution of the whole of the homestead to his mother, on the ground that three fifths of the purchase price thereof was the separate property of the deceased, and by the terms of the will, he, contestant, should receive three fifths of the homestead. After a hearing upon the issues thus raised, the court decreed that the homestead was com-

munity property, and assigned it to Mrs. Garrett, and that the rents and profits of the homestead during the six years and four months, from the appointment until the qualification of the administrator, were received and applied by Mrs. Garrett to her own use and the maintenance and education of contestant; that the items of counsel fees and interest were paid out of such rents; and as contestant had no interest in the homestead, he had no right to object.

From this decree the contestant appeals.

The principal question is, whether the realty from the time it was purchased until the time the homestead character was impressed upon it belonged to the community property, or partly to the community property and partly to the separate estate of deceased. The property, having been purchased for five thousand dollars during the coverture of deceased and Mrs. Bauer, became presumptively the community property of both. This, however, is a disputable presumption.

"A presumption is a deduction which the law expressly directs to be made from particular facts." (Code Civ. Proc., sec. 1959.) And "a presumption (unless declared by law to be conclusive) may be controverted by other evidence, direct or indirect; but unless so controverted, the jury are bound to find according to the presumption." (Code Civ. Proc., sec. 1961.)

Respondent contends that this presumption, upon which the decree depends, and which of itself is indirect evidence,—the latter consisting of two kinds of evidence, inferences and presumptions (Code Civ. Proc., sec. 1957),—must be controverted by *clear* and *decisive* proof; citing *Meyer* v. *Kinzer*, 12 Cal. 251; 73 Am. Dec. 538. In that case the presumption was absolute, because the only proof made to overcome it was the mere joinder by the wife with her husband in a conveyance of certain realty which was community property, and the taking by them in their names jointly of a mortgage for a portion

of the purchase price therefor. These facts standing alone fell within the same presumption that was assailed.

In speaking for the court, Mr. Justice Field said: "This invariable presumption which attends the possession of property by either spouse during the existence of the community can only be overcome by clear and certain proof that it was owned by the claimant before marriage, or acquired afterward in one of the particular ways specified in the statute, or that it is property taken in exchange for, or in the investment or as the price of, the property so originally owned or acquired. The burden of proof must rest with the claimant of the separate estate."

Although in a former part of the same case the phrase "clear and decisive" is used in the same connection, the language above quoted contains a proper and correct statement of the rule, and is in conformity with the rule as established by the Code of Civil Procedure, *supra*.

Applying this rule, we think the evidence is sufficiently clear and certain to overcome the presumption relied upon by the respondent and acted upon by the trial court, and shows that when the deceased married he had separate property consisting of personalty of his own amounting to over three thousand dollars in value, and was then employed as a printer, and five months thereafter changed his occupation, and with his wife's father entered into business as partners, using his separate property, or a portion thereof, to engage in and carry on the partnership business.

They remained in business together until his partner's death, in December, 1871, and in January, 1872, C. A. Bauer, deceased, purchased at probate sale the interest in the business of his deceased partner for $1,030; and two weeks later, at a profit of $370, sold the same interest to a new partner for $1,400, receiving $300 of it at the time, and the remainder in two several payments about one month later.

While it is difficult to determine what became of all the separate property of the deceased between the date of his marriage and the purchase of the homestead property, and to trace his separate funds through the community funds which were commingled so as to destroy their indentity at the two banks where he had accounts, it is sufficiently clear, and the inference may be fairly deduced, especially in the absence of any evidence to the contrary,—excepting the presumption that the homestead was purchased with community funds, and which, in the opinion of the learned trial judge, overcame all the evidence adduced to rebut it,—that at the time the homestead was purchased, deceased's interest in the business he was then engaged in was his separate property, and also the fourteen hundred dollars that he had eight months before received from his partner in business in payment, as before stated, for the interest sold to such partner, and that at least the said sum of fourteen hundred dollars was used by deceased as his separate property in purchasing the homestead, and that the remainder of the purchase price was derived from a loan from his wife's mother, a portion of which loan was used to finish or repair the building that was then on the land purchased. He supported his family out of his earnings or profits in his business, and had no other business or income except occasional dividends from the banks where and while he had money on deposit. These dividends having been earned by the separate and community property, and it not appearing in what proportion, must be considered as belonging to the community property.

Where property is acquired by funds belonging partly to the separate property of one spouse and partly to the community property, the property so acquired becomes in part the separate property of the spouse who furnishes the funds from his or her separate property, and in part the community property of both spouses, in pro-

portion to the separate and community funds invested in it. (*Schuyler* v. *Broughton*, 70 Cal. 282.)

In following the separate property of deceased through its various mutations in the two banks and in his business until the purchase of the homestead, we are aided by the principles, that it having been conclusively shown that deceased owned separate property at the time of his marriage, it continued to remain such (Code Civ. Proc., sec. 1963, subd. 32), and that the profits thereof acquired the same character. (Civ. Code, sec. 163.)

Under the facts in *Smith* v. *Bailey*, 66 Tex. 583, cited by respondent, it was hardly possible to distinguish the separate from the community property. In that case the profits arising from the investment of the married woman's property in carrying on a business for herself, but in her husband's name, became by the law of that state the community estate of herself and husband, and especially as the profits had been for between two or three years commingled with her separate estate in replenishing her stock of goods in carrying on her business, and as there was no evidence to show what part of the profits had been used in keeping up the stock.

When the declaration of homestead was made, in which both joined, the following was inserted therein, to wit: " We further declare that said property was to the extent of three thousand dollars acquired and improved with the separate estate of Charles Bauer. " This declaration or recital was on the part of Mrs. Bauer self-dissevering, and can be used against her, especially as she is claiming under her husband, with whom in the homestead she was a tenant in common.

The acts and declarations of one co-tenant in the presence and hearing of the other, as to their relative rights, is competent evidence against the one claiming under the other. (*Crippen* v. *Morss*, 49 N. Y. 63.)

Standing alone, this admission is not sufficient to overcome the presumption that the property belonged

to the community, but tends to show how she regarded the property at the time it was made. It seems, also, that from that time until she filed her answer to the petition in this contest, a period of twelve years, she treated it as property belonging partly to the separate estate of the deceased, and partly to the community property of both. And while acting as the executrix, she signed and swore to the inventory of the estate, which set forth that the realty, to the extent of three thousand dollars, was the separate property of the deceased. Although this and the statement to the same effect in the declaration of homestead are admissions subject to explanation operating against her, and tending to show how she regarded the property at the time of signing the instruments respectively (*Duff* v. *Duff*, 71 Cal. 513, and authorities cited; Code Civ. Proc., secs. 1850, 1870, subd. 7), they do not, as contended for by appellant, estop her from asserting the contrary. In *Anthony* v. *Chapman*, 65 Cal. 73, the court says:—

"The appellant contends that by representing in his petition for letters testamentary of the will of Mary A. Smith, that said property belonged to her estate, and filing an inventory of her estate which included said property, J. P. Smith was estopped from afterward claiming that it was his own. In *Carter* v. *McManus*, 15 La. Ann. 676, the court says that 'admissions made by an executor or an administrator in the course of judicial proceedings are made for the benefit of the estate represented by him, and do not conclude his individual right by way of estoppel.' Another case very much in point is *Werkheiser* v. *Werkheiser*, 3 Rawle, 326. The facts in this case fall short of what is required to constitute an estoppel."

From the foregoing it follows that the court erred in distributing all of the homestead property to Mrs. Garrett, and in holding that contestant had no interest

therein, and had no right to object to the account of the administrator.

One other point remains to be considered. The attorney at law who drew the declaration of homestead, and was at the time apparently acting for the deceased and his wife in the matter, was interrogated on behalf of contestant as to whether the recital in the declaration of homestead was explained to Mrs. Bauer, if she understood it, what explanation was given, and what she knew about the matter. This was objected to on the ground that it called for a privileged communication between attorney and client, and was sustained and excepted to.

The objection should have been overruled. When two persons address a lawyer as their common agent, their communications to the lawyer, as far as concerns strangers, will be privileged, but as to themselves they stand on the same footing as to the lawyer, and either can compel him to testify against the other as to their negotiations. (1 Wharton on Evidence, sec. 587; *Hanlon* v. *Dougherty*, 109 Ind. 37; Greenleaf on Evidence, sec. 244; *Michael* v. *Foil*, 100 N. C. 178.)

In the latter case it was held that an attorney who wrote the deed could be examined as to what was said by the parties at the time relative to the transaction, whether he was acting as attorney for the one who called him or for both.

We therefore advise that the decree be reversed, and the contest remanded for further proceedings.

BELCHER, C. C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the decree is reversed, and the contest remanded for further proceedings.

Hearing in Bank denied.