## APPEAL OF JULIUS and REBECCA B. SHAFER.

Docket 1817. Submitted June 20, 1925. Decided September 28, 1925.

Where partners, who invested separate property in a mercantile business, have agreed upon salaries which are reasonable in amount, *held*, under the laws of the State of Washington, that the distributive share of the partnership profits, in excess of such salaries, is not community property.

*Harold Preston, Esq.*, for the taxpayers.
*A. Calder Mackay, Esq.*, for the Commissioner.

Before PHILLIPS, GRAUPNER, and TRAMMELL.

Taxpayers appeal from the determination by the Commissioner of deficiencies in income tax as follows:

| Year | Julius Shafer | Rebecca B. Shafer |
|---|---|---|
| 1919 | $6,274.62 | $200.00 |
| 1920 | 16.42 | [1] 11.56 |
| 1921 | 824.21 | [1] 631.41 |
| | 7,115.25 | [1] 442.97 |

[1] Overassessments.

Taxpayers allege that the Commissioner erred in holding that the distributive share received from Shafer Bros., a partnership, is the separate income of Shafer and not community property, as claimed by the taxpayers. No part of the deficiency for 1919 asserted against Mrs. Shafer is due to this ruling, and the effect of disallowing the determination of the Commissioner would be to increase the deficiency due from her while decreasing the amount determined to be due from Shafer.

FINDINGS OF FACT.

For many years prior to 1919 Shafer and his brother were partners engaged in the retail clothing business in Seattle. The taxpayers were married on February 9, 1919. At that time the capital invested in the partnership was over $150,000 in excess of indebtedness and Shafer had a two-thirds interest. The partnership had been in business in a good location for about 20 years, had built up a good clientele and business reputation, and its credit was good. It purchased most of its goods on trade acceptances due in from 30 to 90 days.

The opening inventories, purchases, and sales for the years in question were reported in its tax returns as follows:

| Year | Opening inventory | Purchases | Sales |
|---|---|---|---|
| 1919 | $152,336.67 | $260,524.16 | $502,804.51 |
| 1920 | 155,848.70 | 169,363.70 | 352,100.74 |
| 1921 | 100,024.00 | 162,065.15 | 431,933.06 |

The business was closed out in December, 1921, and there was no closing inventory for that year.

In its income-tax returns for 1919 and 1920 the partnership claimed as a deduction for salaries to the partners $12,000 paid to Julius Shafer and $9,000 to his brother. The net profit after deducting these salaries and the other expenses is divided on the re-

turns on the basis of two-thirds to Julius Shafer and one-third to his brother. In filing his original return for 1919 Shafer set out such sum of $12,000 as salary and reported his share in the balance of the partnership profits as a separate item of income. In an amended return, verified in April, 1921, for the purpose of setting out income on a community basis, the distinction between salary and partnership profits was preserved. In 1920 the item of salary was again reported by taxpayer separately from the balance of the partnership income, both items being reported on a community property basis. In 1921 the profits of the partnership were small and no salaries were claimed in the partnership return or reported on the return of Shafer.

During 1919 Mrs. Shafer spent considerable time with her husband at the store, especially in the evenings, checking over stock on hand, invoices of goods sold and purchased, consulting and advising with him concerning purchases to be made, quality and quantity of particular lines of goods to be purchased and otherwise assisting in the management of the business. During 1920 her participation in the business was small, but during 1921 she again devoted considerable time and effort to the business. Prior to her marriage Mrs. Shafer had six years of merchandising and commercial experience.

The Commissioner permitted the taxpayers to report the so-called salary as community income, and concerning this no question has been raised. Shafer's share in the balance of the partnership profits has been included by the Commissioner as the separate income of Shafer, and the deficiency was determined upon that basis.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

PHILLIPS: This appeal presents a most interesting question under the community property laws of the State of Washington. For several years prior to 1919 Shafer and his brother were partners conducting a retail clothing business in Seattle and had built up a valuable business. Aside from the good will, the partners had an equity of over $150,000, represented by net assets in excess of liabilities. Julius Shafer had a two-thirds interest in the business.

Shafer married in 1919; thereafter, his wife contributed her part-time services to the business in addition to the full-time services rendered by Shafer. Taxpayer claims that thereafter all, or an unseverable part, of the profits of the business arose from the efforts

of Shafer and his wife; that such profits are community property and taxable equally to husband and wife. Taxpayer goes further and contends that whether Mrs. Shafer's services contributed to the income is immaterial; that since the profits, or an unseverable part of them, arose from the services of Shafer, such profits are community property. The latter contention we are not called upon to decide, for we are of the opinion that Mrs. Shafer's services to the partnership were valuable and contributed, at least to some extent, to its earnings.

Nor are we called upon to decide whether husband and wife who are residents of the State of Washington may make separate returns, including one-half of the community income in each return. This is conceded by the Commissioner, who has ruled that a payment of $12,000 made by the partnership to Shafer, and entered on the partnership books as salary, is community property and should be so returned. The sole question is whether Shafer's portion of the balance of the profits, in excess of amounts taken out of the business by the partners as salaries, is to be deemed community property.

The Washington statutes provide:

Property and pecuniary rights owned by the husband before marriage, * * * *with the rents, issues, and profits thereof*, shall not be subject to the debts or contracts of his wife, and he may manage, lease, sell, convey, encumber, or devise by will, such property without the wife joining in such management, alienation, or encumbrance, as fully and to the same effect as though he were unmarried.

The next section provides likewise with respect to the wife's separate property:

*Property, not acquired or owned as prescribed in the next two preceding sections, acquired after marriage by either husband or wife, or both, is community property.* The husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof.

A number of rules have been established by the Supreme Court of Washington for determining whether property is separate or community. These are stated in *In re Brown's Estate*, 124 Wash. 273, as follows:

(1) The presumption is that property acquired during coverture is community property; * * * and the burden is upon the person claiming it to be separate property to establish that as its character.

(2) The status of property is to be determined as of the date of its acquisition.

(3) If property is once shown to have been separate property, the presumption continues that it is separate until overcome by evidence.

(4) The rents, issues, and profits of separate property remain separate property and profits resulting from money borrowed on separate credit are separate property.

(5) Separate property may lose its identity as such by being consolidated with community property.

These rules appear to be well established, but it is the application to particular facts which proves difficult. Taxpayer contends that, since the profit from the partnership business resulted in part from the capital employed and from the good will, both admittedly the separate property of Shafer, and in part from the services rendered by Shafer and his wife, which is community property, this appeal falls within rule (1) set out above and that, as the Commissioner has failed to show how much of such profits was separate property, it must all be considered as earnings of the community. The Commissioner, on the other hand, relies upon rules (3) and (4) set out above.

An examination of the decisions of the Supreme Court of Washington cited by counsel shows three which have a direct bearing upon the question involved.

In *In re Buchanan's Estate*, 89 Wash. 172, it appeared that James Buchanan invested $400 and his wife $500 in stock of a lumber company of which Buchanan became active manager. In the 10-year period from the date of investment to the death of Mrs. Buchanan, the investment increased twenty-fold in value. The court found that although he received a salary, the growth of the business and the accumulation of profits was the result of the personal efforts of Buchanan, and much more so than the result of the small amount of capital invested at the beginning. In holding the stock to be community property the court said:

But, where a small original investment of separate funds is united with the personal efforts of a member of the community, and therefrom profits and gains to the extent of some twentyfold are returned, the property being personal and undergoing many changes, we know of no rule by which the question of such gains being community or separate property can be determined, other than by taking into account the relative contributing force of the original investment and the personal efforts of a member of the community. * * * These observations * * * lead to the conclusion that the gains and profits produced by the personal efforts of appellant, though added to, in a measure, by the original investment, become community property. We agree, however, with the trial court that the funds, though at the beginning separate property of appellant and Sarah A. Buchanan, in the proportion of four-ninths and five-ninths, which purchased the stock in the first instance, have during the ten years of coverture become so intermingled with community property and lost their identity as separate property that all the stock and interest * * * became community property.

*Jacobs v. Hoitt*, 119 Wash. 283, was an action by a creditor to subject certain property to a judgment against Hoitt, collectible only

from his separate property. It appeared that in 1918, prior to his marriage, Hoitt borrowed $8,000 from his mother and established a bakery. Immediately thereafter he married and, with the aid of Mrs. Hoitt, he so conducted his business that by July 1, 1919, he repaid his mother the amount of her loan. He thereafter purchased new equipment for $6,000, and out of the business paid the expenses of himself and family and had in the bank $4,000, which had been garnisheed in that action. The court says:

The complication arises in this case from the fact that the separate property did not produce in and of itself all the profits which accrued to the business. These profits were increased by the labor and efforts of the husband and wife, whose earnings after their marriage of course constituted community property. The difficulty here is to apportion those profits between the original separate property and the subsequent community earnings.

The court apportioned eight-fourteenths of the value of the plant and equipment as the separate property of Hoitt. It found it impossible to apportion the bank account and held it to be community property. Commenting on its decision in the *Buchanan* case, *supra*, the court says:

As we read it, that decision merely holds that in the case before the court it was impossible to say with any degree of certainty what proportion of the income of the community had been contributed by the original separate property. In the case before us, although the exact ratio between the return from the separate property investment and the return from the community efforts is not subject to mathematical determination, yet we are satisfied that at least the amount which we have found was used in paying off the separate indebtedness was the earning from the separate property, and the division between the separate and community nature of the present business is subject to what appears to us a mathematical determination.

In *In re Brown's Estate*, *supra*, it appeared that decedent purchased all the stock of a corporation from his separate funds and through this corporation he bought and sold property, borrowed money, and generally conducted his business during his lifetime. It was held that the value of the stock represented his original separate investment, together with the rents, issues, and profits thereon. The court distinguished the *Buchanan* case on the ground that in that case the original separate investment was so small that it could be ignored, while in the present case there was an original investment of $70,000. "In the *Buchanan* case the question was asked as to what was the source of the profits and gains; in this case the answer is apparent that it was the separate property of Mr. Brown at the time of his marriage."

As we understand these decisions of the Supreme Court of Washington, they lay down the rule that where business income was produced in part by the separate property and in part by the efforts of

the community, and each of these two factors was substantial, the court will attempt to allocate such earnings; but if it appears that the income is to be attributed primarily to one element, the other element may be disregarded.

In this appeal it appears that the income was derived from the purchase and sale of merchandise, purchased with the separate property of Shafer or on the credit of the business. The services rendered were incidental to the profits. Upon this basis there can be no presumption that the profits are to be attributed entirely to the services rendered by the community; that presumption has been overcome by the evidence, and if there is now any presumption it would be that this appeal fell within the decision in *In re Brown's Estate*, *supra*, that it was the separate property which was the primary source of the profits.

But it is clear that neither presumption reflects the true character of the earnings. If possible, the earnings of the business should be apportioned. Taxpayer has himself fixed an apportionment which the Commissioner has adopted, and we believe correctly. Prior to 1919 Shafer and his brother each took a salary of $10,000 from the business. In 1919 and subsequent years Shafer's salary was $12,000 and that of his brother $9,000. Shafer had a two-thirds interest in the business, and this distribution of salary being on a different basis from earnings, in the absence of proof to the contrary we must assume that it represented the judgment of the two partners of the value of the services rendered, including those rendered by Shafer's wife. Prior to the marriage of Shafer his brother and he each received the same amount; thereafter Shafer received $3,000 more than his brother, which would appear to be adequate compensation for the services rendered by Mrs. Shafer.

Taxpayer also urges that a part of such income was the result of a pledge of the community credit; but since the partnership creditors would be required to first proceed against the partnership assets, and these assets were in all instances sufficient, this contention assumes that a part of such partnership assets must be community property, which is the question we are here called upon to determine.

Summarizing our decision, it is that, under the laws of the State of Washington, income arising in part from separate property and in part from community effort should be apportioned; that where an apportionment has been made by the taxpayer which the Commissioner accepts and which appears to be reasonable, such apportionment will not be disturbed.

ARUNDELL not participating.