PAUL F. HILL, RAYMOND C. HILL, FRANK C. HILL AND ADA M. HILL, EXECUTORS, ESTATE OF D. F. HILL, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29399. Promulgated December 11, 1931.

*George S. Hupp, Esq.*, for the petitioners.
*J. E. Marshall, Esq.*, for the respondent.

OPINION.

MATTHEWS: The executors of the will of D. F. Hill in filing a return for Federal estate tax claimed a deduction in the sum of $307,285.12 representing " net community interest of surviving spouse." Such a deduction is allowable for the purpose of computing the State inheritance tax. See the Act of 1917 of the California Legislature which amended the inheritance tax law and which reads in part as follows:

\* \* \* that for the purpose of this act the one-half of the community property which goes to the surviving wife on the death of the husband \* \* \* shall not be deemed to pass to her as heir to her husband, but shall, for the purpose of this act, be deemed to go, pass, or be transferred to her for a valuable and adequate consideration, and her said one-half of the community shall not be subject to the provisions of this act; \* \* \* (Statutes of 1917, p. 880, 881).

Prior to the enactment of this statute exempting the wife's succession from the state inheritance tax, the courts of California had held that the nature of the succession was such as to make it subject to an inheritance tax. The effect of this statute on the determination of the gross estate of a deceased husband in California for the purposes of the Federal estate tax was considered by the Attorney General of the United States in an opinion dated June 24, 1926, 35 Op. A. G. 89; T. D. 3891, C. B. V–2, p. 232, and it was held that the California Act of 1917 did not operate to prevent the imposition of a Federal estate tax on the transfer to the wife of a one-half interest in the community estate. It was stated that the succession was in its essential nature properly subject to an inheritance tax and that inasmuch as the California Legislature, by the Act of 1917 which exempted such succession from the state inheritance tax, did not make any change in the nature of the wife's interest, her succession to an interest in the community estate upon her husband's death was left a proper subject of a Federal estate tax. The regulations of the Treasury Department are in acccordance with this opinion.

In *Griffith Henshaw, Executor,* 12 B. T. A. 1441; affd., 31 Fed. (2d) 945; certiorari denied, we held that the interest of the surviving wife in community property of the deceased husband and herself, both domiciled in California, is subject to the Federal estate tax imposed by the Revenue Act of 1921, citing *Talcott* v. *United States,* 21 Fed. (2d) 493; affd., 23 Fed. (2d) 897. The following quotation is taken from the opinion of the Circuit Court of Appeals in the *Talcott* case:

" \* \* \* We are therefore clearly of the opinion that the amendments to the Civil Code adopted in 1917 did not operate to change such rule to the

extent of creating in the wife a present vested interest in the property of the community during the continuance of the marriage relation." In brief, the status of the wife's interest in community property as defined in *In re The Estate of Moffitt*, remains the law of California and is unaffected by the fact that in 1917 by an act of the legislature the wife's estate on the death of her husband was relieved from the burden of the state inheritance tax. We see no escape from the conclusion that the interest of the surviving wife, as it is finally determined by the Supreme Court of California, is of a nature that renders it subject to taxation under the plain terms of the Federal Revenue Act.

See also *Mary Brent, Executrix*, 6 B. T. A. 143; *John W. Preston*, 21 B. T. A. 840.

The respondent denied the petitioners in the instant case the right to eliminate for Federal estate-tax purposes the wife's interest in community property and determined the deficiency which is the basis of this proceeding. The petitioners protested the elimination of this item on the ground that although the return set out the value of the wife's interest in community property, the entire estate of the decedent was jointly owned by the decedent and the surviving widow. It is claimed by the petitioners that the wife acquired her interest in the decedent's estate by purchase instead of by inheritance and that such interest should be excluded in computing the Federal estate tax.

The Commissioner has accepted as correct the figures set out in the return for Federal estate tax which was filed by the executors and has held the wife's one-half of the net estate of the decedent to represent her interest in community property which is subject to the Federal estate tax. The sole question presented is whether the widow was the joint owner of the property left by the decedent, or whether the property was community property acquired under the laws of California, the entire value of which should be included in the gross estate of the decedent for the purposes of the Federal estate tax.

A great deal of the confusion and uncertainty which have attended the question of the interest of a wife in the community property under the laws of the State of California has been dispelled by the enactment of section 161 (a) (1927 amendment to the Civil Code of California) which provides that the respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband. It has been held, however, by the Supreme Court of California in *Stewart* v. *Stewart*, 204 Cal. 546; 269 Pac. 439, that section 161 (a) can not in any manner relate to or govern the ownership of property acquired prior to that amendment. It is to be borne in mind that the decedent in the instant case died in November, 1923, and that subsequently enacted statutes, such as the 1927 amendment to the code which is incorporated in the

Civil Code of California as section 161 (a), and decisions construing the same, are not determinative of the issue involved herein.

In support of his determination that the entire estate of the decedent was community property under the laws of California which were in existence at the time of decedent's death in 1923, the respondent introduced in- evidence the will of the decedent and the estate-tax return which was filed by the executors.

It is elementary that the determination of the respondent is prima facie correct and that the burden is on the petitioners to overcome this presumption. The petitioners rely upon the testimony of the widow and the sons of the decedent to show that the widow's interest in the decedent's estate was in fact that of a joint owner.

It was testified that the decedent and his wife orally agreed, shortly after they were married in Iowa in 1876, that all the property acquired by them should be the joint property of both. At the time of their marriage neither had any property. The first investment made by the couple after they were married was the purchase of a rooming house, title thereto being taken in both their names. The cash payment was made out of the wife's inheritance of $400 from her father's estate. This property was sold for $3,000 and with this sum they bought a store in Stanbury, Mo. For business reasons title to the store was taken in the name of the husband only. It is not disputed that the wife's labor and efforts materially increased the profits. Various other investments were made out of their savings and the profits from the husband's business. All these investments were made in the husband's name. In or about the year 1900 the couple moved to California, where the husband engaged in the real estate business. The wife testified that the husband was a good buyer, but a poor seller, and that she played an important part in the management of their affairs. One of the sons testified that the decedent relied upon his wife for counsel and generally followed her advice. Decedent's business prospered and he acquired a considerable amount of property. The evidence establishes that the estate left by the decedent was built up by the combined efforts of himself and his wife. These facts do not present a case of joint ownership of the husband's entire estate. Under the California law earnings acquired by the industry and skill of either husband or wife are to be credited to the community. *Estate of Pepper*, 158 Cal. 619; 112 Pac. 62; 31 L. R. A. (N. S.) 1092; *In re Caswell's Estate*, 105 Cal. 475; 288 Pac. 102. It may be here noted that the decedent did not appear to keep any records or accounts to indicate joint ownership. On the contrary, so far as the record discloses, the decedent received the entire income from the property and exercised all the rights of ownership. He disposed of the entire estate in his will, devising one-half thereof to his wife and directing that the remaining one-

half be divided equally between their three sons. The widow and the sons of decedent did not contest the provisions of the will, but accepted the same and duly qualified as executors thereof. The wife thereby received the same proportion of her husband's estate which she would have received as a joint owner. It clearly appears that the greater part of the decedent's estate represented income and profits from his real estate business. We conclude that under the California law relating to community property, and for the purposes of the Federal estate tax, the property standing in the name of the husband at the time of his death was not jointly owned by the decedent and his wife.

In view of the testimony that the wife inherited from her father and from her two sisters certain sums of money, which inheritances constitute her separate property under the California law, it will be necessary also to determine whether any part of the property devised by the husband represented the separate estate of the wife.

Until the decedent and his wife moved to California there was no community property. They brought with them property which they had acquired in another state. In *Abraham B. Johnson et al.*, 7 B. T. A. 820, it was pointed out that when property is brought from one state to another, rights vested by the law under which it was acquired are recognized and protected. See also *Julius and Rebecca B. Shafer*, 2 B. T. A. 640; *T. C. Phillips*, 9 B. T. A. 153. Thus, if it can be shown that either the husband or the wife acquired personal property in a foreign jurisdiction which is by law of the place where acquired the separate property of one or the other of the spouses, such property continues to be the separate property of that spouse when brought within the State of California and property received in exchange for it, or purchased by it, is also the separate property of such spouse.

There is no question that the sum of $400 which the wife inherited more than 20 years before the couple moved to California constituted her separate property, but it does not appear that she had any separate property which was capable of identification at the time they took up their residence in California. We have found that the $400 was invested in a rooming house which was owned jointly by the wife and her husband and that the rooming house was sold for $3,000, which latter amount was invested in a store in Missouri. It is impossible to trace the inheritance further, because title to the store was taken in the name of the husband only. and thereafter all investments were made by him individually, and the profits were likewise reinvested. The store was purchased about the year 1878 and the couple did not move to California until in 1900. The evidence does not disclose how much money the decedent and his wife brought with

them to California. The record indicates that the greater part of the decedent's estate was acquired after moving to California and that it was acquired by the community through the labor and industry of the decedent and his wife, and through the investment and reinvestment thereof after being so acquired. Under these circumstances we hold that the wife's inheritance of $400 lost its identity in Missouri and the extent of the separate estate at the time they took up their residence in California is not shown.

The wife testified that the sums of $28,000 and $3,500 which she inherited from her sisters while she was living in California, were turned over to her husband to be invested in real estate or to be applied toward paying off indebtedness on real estate to which he held title. Section 162 of the Civil Code of California provides that all property of the wife, owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues and profits thereof, is her separate property. The above-mentioned amounts inherited by the wife come within the language of this section and constituted her separate property at the time she received them. These sums were invested in real estate. It is a well established rule that where real property is purchased in part with the wife's separate funds and in part with the community funds of husband and wife, the property so acquired becomes in part the separate property of the wife and in part the community property of both spouses in proportion to the separate and community funds invested in it. *In re Bauer's Estate*, 79 Cal. 304; 21 Pac. 759, citing *Schuyler* v. *Broughton*, 70 Cal. 282; 11 Pac. 719; *Jackson* v. *Torrence*, 83 Cal. 521; 23 Pac. 695; *Flournoy* v. *Flournoy*, 86 Cal. 286; 24 Pac. 1012.

There are well defined lines which mark the separate property of each spouse as distingushed from the community property and it is the policy of the law to protect, so far as consistent with the transaction of the business of the family, the integrity of each of the three funds. Where the separate property or capital of one spouse and the labor and skill of both spouses have combined to produce profits, and it can not be determined what proportion is attributable to each factor, the owner of the separate property or capital is entitled to have his or her separate property back either in specie or through compensation for its use, and the balance will be given to the active factor, the toil and talent of the spouses. In *Pereira* v. *Pereira*, 156 Cal. 1; 103 Pac. 488; 23 L. R. A. (N. S.) 880; 134 Am. St. Rep. 107, the husband with his separate property and funds operated a saloon and cigar business which produced an annual net income of about $5,000. The court below held the net profit of the business was community property. The Supreme Court of California held that the

capital which the husband had invested in the business at the time of the marriage was his separate estate, and that such proportion of the profits derived from the business as was justly due to the capital invested should be considered to be his separate estate. The court said:

The fund [the husband's separate property] remained in the business after marriage and was used by him in carrying it on. The separate property should have been credited with some amount as profit on this capital. It was not a losing business, but a very profitable one. It is true that it is very clearly shown that the principal part of the large income was due to the personal character, energy, ability, and capacity of the husband. This share of the earnings was, of course, community property; but without capital he could not have carried on the business. In the absence of circumstances showing a different result, it is to be presumed that some of the profits were justly due to the capital invested. There is nothing to show that all of it was due to defendant's efforts alone. The probable contribution of the capital to the income should have been determined from all the circumstances of the case, and, as the business was profitable, it would amount at least to the usual interest on a long investment well secured. * * * We think the court erred in refusing to increase the proportion of separate property and decrease the community property to the extent of the reasonable gain to the separate estate from the earnings properly allowable on account of the capital invested.

Upon a rehearing, the court further held:

The defendant introduced no evidence to show that the capital invested was entitled to a greater return than legal interest, and, in the absence of such evidence, the burden of proof being upon him, that would be the utmost he could claim.

Although the *Pereira* case involved a division of community property in a divorce proceeding, this case has been cited with approval and followed in a number of subsequent decisions by the California courts, including cases involving the determination of property rights upon the death of one spouse. See *Lenninger* v. *Lenninger*, 167 Cal. 297; 139 Pac. 679; *In re Gold's Estate*, 170 Cal. 621; 151 Pac. 12; *In re Caswell's Estate, supra; In re Fellows' Estate*, 106 Cal. 681; 289 Pac. 887.

In the instant case we do not know what specific parcels of real estate were purchased with the sums inherited by the wife. The husband's business was dealing in real estate. He bought property and divided it into lots and sold them. He also made improvements on real estate and received income therefrom. We know that the wife's separate funds were applied in carrying on the husband's business, which was a profitable one, and it is not necessary to trace the specific property in which the wife's separate funds were invested. We have found that the greater part of the decedent's estate was acquired by the community through the labor and industry of both spouses and through the investment and reinvestment of the profits of decedent's business. The decedent never had any separate prop-

erty and the evidence is clear that the wife made no gifts to the husband. Under these circumstances and in the absence of evidence that the capital invested by the wife is entitled to a greater return, we hold that the wife's inheritances in the respective amounts of $28,000 and $3,500, with interest thereon at the legal rate from the dates such amounts were turned over by her to her husband, represent the separate property of the surviving wife, and should not be included in the decedent's gross estate. The balance of the property which was owned by the decedent at the time of his death is held by us to constitute community property, within the meaning of section 164 of the Civil Code of California, and is subject to the Federal estate tax.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

BLACK concurs in the result only.

LANSDON, MURDOCK, and SEAWELL dissent.