[Civ. No. 12392. First Dist., Div. One. June 15, 1943.]

DIANA HOGEVOLL, Respondent, v. S. T. HOGEVOLL, Appellant.

190

S. T. Hogevoll in pro. per., John H. Crabbe and Laurel W. Streiff for Appellant.

Crist & Beene for Respondent.

PETERS, P. J.—Defendant appeals from a judgment quieting plaintiff's title to a parcel of improved real property located in San Francisco.

The parties were married in 1912. They were admittedly husband and wife at the time of trial in June of 1942, but were living separate and apart, and had been so doing for some time prior to that date. In 1932 the wife secured an interlocutory decree of divorce on the grounds of desertion, but did not secure the final decree. Later she obtained another interlocutory decree of divorce but again failed to obtain a final decree.

Upon the trial plaintiff introduced as her source of title to the property a commissioner's deed naming her as grantee and dated September 25, 1941. This deed was issued following a sale upon a mortgage foreclosure. The deed recites that a foreclosure sale was had on September 17, 1940, at which plaintiff purchased the property for $2,800. Plaintiff testified that she obtained all of the cash used to buy the property from her half-brother; that she had given him her unsecured promissory note for $2,800; that the note was due a year from its date; that she had paid nothing on the note; that her half-brother had not pressed her for the money; that he was willing to wait for his money until "things get settled up"; that he had assisted her financially many times in the past. The trial took place in June of 1942, so that at that time the note, although overdue, was not barred by the statute of limitations.

Defendant testified that the San Francisco property was purchased in 1914 for $3,500; that there was a down payment of $500, a bank mortgage of $1,800 and a second mortgage for the balance; that the mortgages were executed by both plaintiff and defendant; that title to the property was taken in the name of the plaintiff and defendant; that all payments on the property were made from his separate funds from income from property owned by him before marriage and located in Butte, Montana. The amount of the payments, if any, made on the two mortgages does not appear. The defendant also testified that subsequent to their marriage they had acquired two blocks of lots in Menlo Park, title to which

was taken in the names of both; that $11,000 had been paid on these lots; that all such payments, as well as the payments on the San Francisco property, had been made from his separate estate, being the rents from the Montana property; that he had wanted to sell some of the Menlo Park lots to make the payments on the mortgage on the San Francisco property; that his wife refused to sell; that for this reason he could not make the payments, which resulted in the foreclosure.

This is a fair summary of all the evidence. The trial court held that the property was plaintiff's separate property and quieted her title thereto.

The exact position of defendant is not entirely clear. On this appeal it seems to be his contention that the loan secured by the wife from her half-brother was community property, and that the property purchased with such loan is, as a matter of law, community property. In his original answer he alleged that the property is "community property belonging to the plaintiff and defendant in common," and again that the "property is community property and the title is in the name of plaintiff, but it has been accumulated while living together as husband and wife." In his original cross-complaint he alleged that the property "was deeded to the plaintiff and the defendant as tenants in common," and that they are still owners in common. In this pleading defendant also sought a judicial determination of the status of the Menlo Park property. After a demurrer had been sustained to the original answer and cross-complaint defendant filed an amended pleading which relates only to the San Francisco property. In the amended answer he alleged that this property "belongs to and is the property of this defendant and he is the owner thereof." In the amended cross-complaint he alleged that the amount paid on the purchase had been paid from his separate estate. He then alleged that his wife at the foreclosure sale purchased the property "for and in behalf of the plaintiff and the defendant as tenants in common," and that "she then and there took title . . . in her own name in trust for the plaintiff and the defendant as tenants in common." It is quite apparent that defendant is confused as to whether the property is his separate property, held in common, or is community property. This same confusion of thought persists in defendant's briefs, although the emphasis there is on the contention that the real property, purchased

with the loan, became, as a matter of law, community property.

The question in this case is as to the status of the property after plaintiff purchased it at the foreclosure sale. The question of its status before that time is of importance only for the bearing it may have on the nature of the property after the foreclosure sale. ▇ When the property was acquired in 1914, since it is admitted that title was taken in the name of the husband and wife, the presumption would be that the wife took a one-half interest as her separate property, and that the other one-half was community. (§ 164, Civ. Code, as it read in 1914; cases collected 3 Cal.Jur.Supp. p. 564, § 68). ▇ If, as defendant sought to show, payments for the property were made with his separate funds, the presumption would be that he intended a gift to her of the one-half interest. (Cases collected 3 Cal.Jur.Supp. §§ 64 and 65, p. 558, et seq.) The showing of the extent to which these payments were made from his separate estate was inconclusive. If payments were thus made he had the burden of showing no intent to make a gift. (Cases collected 3 Cal.Jur.Supp. p. 564, § 68.) The husband made no showing on this issue at all. The result is that, had the trial court made a finding on the status of the property before the foreclosure (findings were waived), he would have been compelled to find that presumptively the wife then owned one-half of the property as her separate property as a tenant in common, and the other one-half was owned as community property.

▇ The commissioner's deed issued after foreclosure was to the wife alone. Both the husband and wife were present at the foreclosure sale. From such a deed a presumption arises that the property is her separate property, and the burden is on the husband to show that it is not. (§ 164, Civ. Code.) It is the position of the husband that because the wife testified she bought the property on the mortgage foreclosure sale with borrowed funds the presumption, as a matter of law, has been rebutted, and the presumption now is that the property is community.

The rules applicable to the status of funds borrowed by a married person are easy to state, but, like many of the other rules applicable to community property law, difficult to apply to a given set of facts. Amply supported by the authorities cited, these rules are summarized in 3 Cal.Jur.Supp. p. 535, sec. 47, as follows:

"The presumption that moneys borrowed during the marriage become community property has been mentioned in several of the cases. Money borrowed on personal security is certainly community property. But where money is borrowed upon the faith of the separate property of a husband or property is acquired with the proceeds of a loan on the credit of his separate property, it becomes his separate property; and the same is true even though the loan was unsecured. A personal guaranty given by a married man has been held to be a loan upon the credit of the separate property of the borrower.

"The wife's loans are treated in the same manner as the husband's. Thus money lent to the wife is presumably community property, as it is in the case where it is lent to the husband. Likewise, property purchased with money borrowed by a married woman without security and repaid with community funds is deemed to be community property; whereas that purchased with a loan on her separate property is separate property.

"Though the cases in California are clearly to the effect that in general money borrowed by the wife becomes community property, much may be said in favor of the view that since she cannot bind the community by her contracts, moneys borrowed by her should be presumed to be borrowed upon the faith of her separate estate. If money be lent or equipment furnished to the wife in carrying on her separate business, the title to the business is not affected, and it does not become community property.

"The courts have shown an increasing tendency to find that loans have been made upon the faith and credit of the separate property of either spouse. . . .

"The mere fact that existing mortgages are assumed or the fact that mortgages are given by husband and wife as a part of the purchase price is not, in itself, conclusive that the credit represented by the mortgages is the credit of the community. Where then property is purchased by a married woman as and for her separate property, the mere fact that her husband joins with her in executing a note and mortgage to secure part of the purchase price does not rebut the deduction that the property is separate, the entire consideration having been furnished by the wife. The rule is the same where title is taken in the name of the husband."

As indicated in the above quotation, there has been a

marked tendency in the cases to affirm findings that a particular loan was made upon the personal credit of one spouse upon the credit of his or her separate property. This is particularly true where property is purchased by one spouse with the proceeds of the loan and taken in the name of the borrowing spouse. The cases find no difficulty in finding property purchased with loans made after marriage to be separate property if made upon personal credit upon the faith of separate property in spite of sections 162-164 of the Civil Code. Those sections define separate property as property acquired before marriage and that acquired afterward by gift, bequest, devise or descent, or the rents, issues or profits therefrom, while "all" other property is deemed to be community property. The theory is that a loan made upon the credit of one spouse, is, in effect, derived from the separate property of that spouse.

In *Vandervort* v. *Godfrey*, 58 Cal.App. 578 [208 P. 1017], the court squarely held that the test is whether the credit is advanced upon personal credit or upon credit of the community property. The trial court had found that the property purchased with the loan was community property. In reversing the judgment the court pointed out that the deed to the property had been taken in the name of the wife who had borrowed the money, and pointed out that such a deed raises a disputable presumption that the property was separate. The court then stated (p. 581) : "To rebut this presumption the respondent relies upon the claim that the property was purchased by money borrowed by the wife during coverture, but, as we have seen, if any money was borrowed in the sense that a loan was made from the daughter, it was obtained upon the sole credit of the wife and not upon the credit of the community." The court points out that under section 167 of the Civil Code, when a wife borrows money after marriage, the community property is not liable for the debt, and emphasizes that the loan here involved was "her individual obligation and not binding upon the community," and was made "upon the sole credit of the wife," and upon her "individual credit." The court then holds that the presumption that the property was separate property because of the deed being in her name can only be overcome "by clear and convincing proof," and that it was not overcome by evidence that the property had been purchased with a loan secured on her credit.

When one spouse borrows money on other than the credit of the community, and title is taken in the name of the borrowing spouse but both spouses sign a mortgage or note, this last factor does not make the property community, or overcome the presumption. (*Heney* v. *Pesoli*, 109 Cal. 53 [41 P. 819]; *Flournoy* v. *Flournoy*, 86 Cal. 286 [24 P. 1012, 21 Am.St.Rep. 39].) If the personal credit of one of the spouses is the basis of the loan, the mere fact that no security is given for the loan is of no importance in overcoming the presumption. (*Flournoy* v. *Flournoy*, 86 Cal. 286 [24 P. 1012, 21 Am.St.Rep. 39]; *Dyment* v. *Nelson*, 166 Cal. 38 [134 P. 988]; *Farmers Exch. Nat. Bank* v. *Drew*, 48 Cal.App. 442 [192 P. 105]; *Estate of Barnes*, 128 Cal.App. 489 [17 P.2d 1046].) For other cases where, under various factual situations, the property purchased with loans has been held to be separate see *Estate of Ellis*, 203 Cal. 414 [264 P. 743]; *Stewart* v. *Stewart*, 113 Cal.App. 334 [298 P. 83]; *Rothschild* v. *Davis*, 217 Cal. 660 [20 P.2d 329].)

At least two cases have held, on special facts, that the property purchased with the proceeds of a loan was community. Neither is in point. In *Moulton* v. *Moulton*, 182 Cal. 185 [187 P. 421], the purchase price of property was paid, in part, with funds borrowed on the note of the wife, but title was taken in the name of the husband. That factor was found to be decisive and it was held that the property was community. *Schuyler* v. *Broughton*, 70 Cal. 282 [11 P. 719], involved a case where the wife borrowed money and used it to buy property, title to which was taken in her own name. It was held that the property was community. That case, however, was decided in 1886. It was not until 1889 that the statute first provided that property conveyed to a married woman by an instrument in writing is presumed to be her separate property. (See discussion and cases cited 3 Cal.Jur.Supp. p. 558, § 64.) *Mosesian* v. *Parker*, 44 Cal. App.2d 544 [112 P.2d 705], relied upon by defendant, makes the broad statement that it is the "general rule that money borrowed on personal security by a husband or wife is community property" (p. 550), but the remark was not a very important part of the decision. The use of the phrase "personal security" is misleading, because if it means personal credit upon faith of separate property it is clearly erroneous. Moreover, that case did not involve the presumption found in section 164 of the Civil Code.

196

■ The defendant's theory that the presumption that property standing in the name of the wife alone is her separate property, is overcome, as a matter of law, by the presumption that property purchased with borrowed funds is community. We do not so interpret the cases. ■ Such rule would be inconsistent with the rule announced in many cases that the presumption of separate character of the property codified in section 164 of the Civil Code is not overcome by a showing that the property was actually purchased with community funds. In such case it will be presumed that a gift was intended, and the burden is upon the husband to overcome that presumption. (See cases collected 3 Cal.Jur. Supp. p. 558, § 64; p. 650, et seq., §§ 135-137.) That is, where the conveyance is in the name of the wife as grantee and it appears that the purchase price has been paid with community funds, other than borrowed funds, it will be presumed that a gift of such funds by husband to wife was intended, and the burden is on the husband to show the absence of donative intent. ■ But the rule for which defendant contends is that although the conveyance is to the wife alone, the presumption that the property is her separate estate disappears upon a showing that the purchase price has been paid with funds borrowed upon the note of the wife alone, for which note community funds are not even liable. There is no justification for such an unreasonable rule, and the cases do not sustain it. The better rule would seem to be that when the wife borrows money to buy property and takes title to such property in her name alone the burden rests on the husband to prove that the loan was made on the credit of the community. The primary presumption is the statutory one that when title is taken in the name of the wife alone it is her separate property. That presumption cannot be overcome by a mere showing that the property was purchased by a loan. The husband must further show that the loan was made on the credit of the community property, and rebut the presumption of a gift.

■ Applying these rules to the facts of this case, it is apparent that the husband did not sustain the burden imposed upon him. These parties, although married, were living separate and apart. There was no confidential relation in fact existing between them. Prior to the foreclosure the wife presumably owned, practically speaking, a three-fourth interest in the property and the husband owned a one-fourth interest. Although some evidence was offered by the husband

to the effect that the property was originally purchased with his separate funds, he offered no evidence at all to rebut the presumption of a gift. The deed at the foreclosure sale named the wife as grantee. That raised a strong presumption that it was her separate property. While she testified that the money used in its purchase was secured from her half-brother, it is a reasonable inference that the loan was made solely on the personal credit of the wife. Certainly, in view of the provisions of section 167 of the Civil Code, both from a standpoint of law and fact, the loan could not have been made on the credit of the community. The husband offered no evidence at all to rebut the inference that the loan was made on the personal credit of the wife. On such a record the only reasonable conclusion possible is that the property was her separate property.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied July 15, 1943, and appellant's petition for a hearing by the Supreme Court was denied August 12, 1943. Schauer, J., voted for a hearing.